IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JUSTIN MORROW                                                                                         PLAINTIFF

v.                                              Civil No. 4:22-cv-SOH-BAB

SHERIFF ROBERT GENTRY,                                                                         DEFENDANTS
ROMONA ARENAS,
JAIL ADMINISTRATOR DEPUTY CHRIS
WOLCOTT,
JAILER BLAKE REEL,
NURSE TAMMY FOWLER,
JAILER TAYLOR GENTRY,
STEVEN FOLTZ (Turn-Key Health),
JAILER SYNAMON GARRETT,
JAILER EULERIO HERNANDEZ,
JAILER BARBARA VALENTINE,
and JAILER BRANDON

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

## I. BACKGROUND

The precursor to this case was filed by Ronnie Luna, an inmate of the Sevier County Sheriff's Office ("SCSO"), on behalf of himself and 20 other SCSO inmates in *Luna v. Gentry*, Case No. 4:22-cv-04098. Pursuant to the Prison Litigation Reform Act, separate cases for the 20 inmates were opened, including this case. (ECF No. 2). The provisional filing Order directed Plaintiff to file a completed *in forma pauperis* application and an Amended Complaint. (*Id*.) Plaintiff filed his IFP application and his First Amended Complaint on October 4, 2022. (ECF No. 4).

Due to deficiencies in his IFP application, Plaintiff was directed to submit another IFP application, which he did on October 25, 2022. (ECF Nos. 6, 7). In this IFP application, Plaintiff stated that SCSO staff refused to complete the required certificate of inmate account. (ECF No. 7 at 3). On October 26, 2022, the Court entered an Order directing the SCSO Jail Administrator to complete and return the certificate by November 9, 2022. (ECF No. 8). A completed certificate was filed on November 7, 2022. (ECF No. 9). Plaintiff was granted IFP status on November 8, 2022. (ECF No. 10). On December 5, 2022, the Court entered an Order directing Plaintiff to submit a Second Amended Complaint to correct deficiencies in his First Amended Complaint by December 27, 2022. (ECF No. 12). Plaintiff filed his Second Amended Complaint on January 10, 2023. (ECF No. 13).

In his Amended Complaint, Plaintiff identifies himself as a pretrial detainee. (*Id*. at 2). For his first claim, Plaintiff alleges that on August 6, 2022, "Defendants knew" there were inmates in the building complaining of COVID-19 symptoms but failed to take preventative measures such as checking inmate temperatures and isolating inmates. (*Id*. at 6). Instead, they were told that they would "shelter in place" and let COVID run its course, because it would be stressful to the SCSO staff to move them. (*Id*.). Plaintiff characterizes the situation as a "blatant disregard of sanitation,

PPE, refusal of face masks, and quarantine of those infected." (*Id*. at 7).  He also alleges inmates were told they would be charged for COVID-19 vaccinations.  ((*Id*. at 6-7).  Plaintiff alleges that he was "constantly exposed" to the deadly virus.  (*Id*. at 7).  He does not allege that he contracted COVID-19.  Plaintiff names all listed Defendants for this claim, but does not indicate how each Defendant was personally involved in these alleged wrongful actions.  He proceeds against them in their official and individual capacities.  (*Id*.).  In the section of the complaint form where he is asked to detail his official capacity claim, Plaintiff states the custom and policy which violated his rights was the "lack and disregard of correct medical procedures, timely grievances, medical requests, & personal complaints/conversations with staff members fully aware of our conditions both medically and sanitationally."[2]  (*Id*.).

For his second claim, Plaintiff again lists the date of occurrence as August 6, 2022.  (*Id*. at 8).  In the portion of the complaint form where he is to identify each Defendant involved, Plaintiff does not identify any Defendant other than "Robert Gentry Et Al."  (*Id*.)  Plaintiff alleges that several inmates in the cell complained of COVID-19 symptoms but were denied COVID tests or medical care.  (*Id*.).  In the text of the claim, Plaintiff states that Defendant Synamon Garrette came into the pod wearing a face mask herself, but refused to provide face masks to the inmates "until 2-3 days later."  (*Id*. at 9).  He further alleges that Defendant Tammy Fowler came into the pod on August 10, 2022, and told the inmates that "if COVID is present we will shelter in place because it would be stressful to move the infected to a quarantined area."  (*Id*.).  He alleges she returned "later" on an unspecified date and administered COVID tests, at which time "over half" of the

---

[2] The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance).  Thus, to the extent that this statement could be interpreted as the denial of a grievance or complaint process, it will not be considered further.

inmates tested positive." (*Id*.).  Plaintiff did not allege that he was one of those inmates.  Finally, he alleges the Defendant Fowler told the inmates to "refrain from notifying your families of COVID's presence in the jail." (*Id*.).  Plaintiff believes this was her attempt to "cover up her malpractice." (*Id*.).

Plaintiff seeks compensatory and punitive damages, and for the Defendant to be fired from the jobs.  (*Id*. at 11).

## II.  LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal

framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

#### A.      Personal Capacity Claims

"Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). To state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights. *See Martin*, 780 F.2d 1337. (Even a pro se Plaintiff must allege specific facts sufficient to state a claim). Except for Defendants Garrette and Fowler, Plaintiff failed to state how each named Defendant was personally involved in any violation of his constitutional rights. As such, Plaintiff's individual capacity claims against all Defendants except Garrette and Fowler are subject to dismissal.

Although Plaintiff does allege factual allegations specific to Defendants Garrette and Fowler, these allegations fail to state a plausible claim. To the extent his allegation that Defendant Garrette denied him a face mask for 2-3 days could be interpreted as a conditions of confinement claim, it is subject to dismissal. As a pretrial detainee, this Court analyzes Plaintiff's conditions of confinement claims under the Fourteenth Amendment's Due Process Clause. *Stearns v. Inmate Services Corporation*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 525 n.16 (1979)). In articulating the standard governing pretrial detainees' claims related to conditions of confinement, the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979) held that the government may detain defendants prior to trial and "may subject them to the restrictions and conditions of a detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. There are two ways to determine

5

whether conditions of confinement rise to the level of punishment. First, "a plaintiff could show that the conditions were intentionally punitive." *Id.* at 538. Alternatively, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate government purpose or were excessive in relation to that purpose." *Stearns*, 957 F.3d at 907 (quoting *Wolfish*, 441 U.S. at 538-39). Not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "There is a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [courts] review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

In this case, the imposition upon Plaintiff was *de minimis*. Plaintiff does not allege that Defendant Garrette expressly demonstrated an intent to punish him, makes no allegation regarding legitimate government purpose, and does not allege that he became ill or suffered any other injury because he was denied a face mask for 2-3 days. Thus, Plaintiff fails to state a plausible claim against Defendant Garrette. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of § 1983 complaint where plaintiff failed to allege any injury).

To the extent his allegation that Defendant Fowler told him refrain from telling his family about COVID-19 in the facility could be interpreted to be a violation of his First Amendment rights, it is also subject to dismissal. Even assuming Plaintiff had engaged in some unidentified protected activity prior to Defendant Fowler making this comment, Plaintiff alleges no injury which would deter a person of ordinary firmness from exercising their First Amendment rights. *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (citing *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) ("The ordinary-firmness test is . . . designed to weed out trivial

matters from those deserving the time of the courts as real and substantial violations of the First Amendment."). Plaintiff does not allege, and his Complaint does not reflect, that he was chilled from exercising his First Amendment rights. Plaintiff's claim against Defendant Fowler fails to state a plausible claim.

### B. Official Capacity Claims

A governmental entity can be held liable only when the constitutional violation was caused by a policy, custom, or failure to train or supervise. *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 691 (1978). Plaintiff's official capacity claim is for "lack and disregard of correct medical procedures." Such vague and conclusory allegations regarding a period of, at most, a few days cannot support an official capacity claim. *See Nix v. Norman,* 879 F.2d 429, 433 (8th Cir. 1989). ("To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom . . . or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."); *Arnold v. Corizon, Inc*, No. 1:15CV62, 2015 WL 4206307, at *2 (E.D. Mo. July 10, 2015) (conclusory claims that defendants acted according to some unspecified policies or customs are not enough to state official capacity claims); *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (to establish the existence of an unconstitutional custom, incidents must occur "over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials.").

7

## IV.  CONCLUSION

For these reasons, it is recommended that: (1) the case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) Plaintiff/Petitioner is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial consideration; and (3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **13th day of February 2023**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE